# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Karina Ramirez,                                    Civ. No. 17-5107 (DWF/BRT)

        Plaintiff,

v.
                                                        **ORDER**
AMPS Staffing, Inc., and
Darana Hybrid, Inc.,

        Defendants.

## INTRODUCTION

Plaintiff Karina Ramirez sued AMPS Staffing, Inc. ("AMPS"), and Darana Hybrid, Inc. ("Darana"), under Minnesota law for alleged retaliation in violation of the Minnesota Whistleblower Act ("MWA"). (Doc. No. 1, Compl. ¶¶ 21–31.) This matter is before the Court on Plaintiff's Motion for Leave to Amend the Complaint to add punitive damages. (Doc. No. 28.) A hearing was held on Plaintiff's motion on March 8, 2018.

As has been done traditionally in this district, the parties briefed and argued Plaintiff's motion assuming that the procedure set forth in Minnesota Statute § 549.191 governed Plaintiff's request to amend her Complaint. Section 549.191 requires the motion to be supported by an affidavit, and requires the court to grant the motion if, after a hearing on the motion, the court finds prima facie evidence in support of the motion. Minn. Stat. § 549.191. Within the past year, however, courts in this district have freshly analyzed whether Minn. Stat. § 549.191 or Federal Rule of Civil Procedure 15 should govern a request for leave to amend to add punitive damages in a request for relief. *See*

*Inline Packaging, LLC, v. Graphic Packaging Int'l, LLC*, No. 15-cv-3183 (ADM/LIB),

Doc. No. 534 (D. Minn. Mar. 8, 2018) (denying Plaintiff's motion to amend to plead

punitive damages under a Minn. Stat. § 549.191 framework); *In re Bair Hugger Forced*

*Air Warming Devices Prods. Liab. Litig.*, No. 15-2666 (JNE/FLN), 2017 WL 5187832

(D. Minn. July 27, 2017) (denying Plaintiff's motion to amend to plead punitive damages

under a Federal Rule of Civil Procedure 15 framework). Given the procedural posture of

this case and the evidence presented by Plaintiff, this Court need not decide whether the

approach in *In re Bair Hugger* or *Inline Packaging* should prevail because, under either

standard, the amendment is justified based on the evidence presented by Plaintiff to

support her claim for punitive damages relief. Therefore, for the reasons set forth below,

Plaintiff's motion is **GRANTED**.

## BACKGROUND

Plaintiff alleges that she was improperly fired under the MWA in retaliation for

refusing to follow an order that violated state and federal law. (Compl. ¶¶ 21–27.) To

summarize the pertinent facts, Plaintiff began working for AMPS and Darana[1] on

December 7, 2015, as a human resources generalist. (*Id.* ¶ 11.) One of her job duties was

to handle payroll. (Doc. No. 31, Decl. of Karina Ramirez in Supp. of Mot. for Leave to

---

[1]    Plaintiff was formally hired by AMPS. (Doc. No. 38, Defs.' Joint Mem. in Opp'n to Mot. 3.) Defendants list Darana as "an industrial staffing customer of AMPS." (*Id.*) However, the companies share a CEO in Darryl Cuttell and, while they are separate entities, the facts show overlap between the corporations. While Defendants do not formally consider Plaintiff a former employee of Darana (*see* Doc. No. 16, Answer), under both Rule 15 and Minn. Stat. § 549.191, a court considers a motion to amend based on Plaintiff's alleged facts and draws all reasonable inferences in Plaintiff's favor. *See In re Bair Hugger*, 2017 WL 5187832 at *7; *Inline Packaging*, 15-cv-3183, Doc. No. 534 at 3–4.

Am. Compl. ("Ramirez Decl.") ¶ 2.) On June 30, 2017, Plaintiff processed new hire

paperwork for an incoming human resources generalist. (*Id.* ¶ 3.) Plaintiff asked Jeff

Marcum, Plaintiff's supervisor and Darana's Chief Financial Officer, if she was being

replaced. Marcum explained to Plaintiff that, as far as he knew, she still had a future in

the company. (*Id.* ¶¶ 4–5.)

Later that day, Bart Tolleson, Darana vice president of operations, sent an email to

Alison Meyer, director of recruiting, and Darryl Cuttell, Darana and AMP CEO, stating

that a crew in New York was walking out on a job. (*Id.* ¶ 6; Doc. No. 30, Mem. of Law in

Supp. of Pl.'s Mot. to Am. Compl. ("Pl.'s Mem.") 2.) Tolleson stated in the email that the

workers are "complete pieces of [****], they MUST go on the never [*******] hire list

again and make sure they get not a [****] dime to go home of travel and that their hotels

are shut down ASAP." (Doc. No. 35, Pl.'s Ex. B (profanity omitted).) He continued to

say, "If I knew a hit man in the area there would be some holes that needed digging real

quick." (*Id.*) Approximately forty minutes later, Tolleson sent another email. (Ramirez

Decl. ¶ 8.) This email was a response to an email from Joe Holley, Darana mechanical

installation supervisor, which went to six recipients, including Ramirez, Tolleson, and

Cuttell. (Doc. No. 35, Pl.'s Ex. C at 1; Pl.'s Mem. at 3.) The body of the email listed the

names of the six individuals who walked out on the job. (*Id.*) Tolleson responded to all

the recipients, stating that, "Per Darryl, these 6 lower life forms are not to be paid this

week for any hours worked this week." (*Id.*) Darryl Cuttell also responded to Holley's

email. Cuttell stated, "They will not be paid next week, as per Darryl Cuttell, have them

call with any concerns and I will deal with [them] accordingly as they have done to us." (Doc. No. 35, Pl.'s Ex. D at 3.)

In response, Plaintiff sent Cuttell, Holley, and Meyer an email, copying Tolleson, Gene Mercer, Rodney Caudill, and Wayne Nelums.[2] In her email, Plaintiff inquired, "Just to confirm, you do not want to pay them for hours worked?" (*Id.*) In less than one hour, Cuttell responded "NO!!!!!!!" (*Id.* at 2.) His email was sent to all the recipients of Holley's original email. (*Id.*) Plaintiff then sent an individualized email to Cuttell, which stated, "I do not feel comfortable, not paying these employees for hours worked because it is illegal (Dept. of Labor Laws)." (*Id.* at 1.) Within minutes, Cuttell replied, "I DO NOT CARE WHAT YOU THINK, WE ARE NOT PAYING THEM!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!" (*Id.*) Cutell copied Tolleson, Marcum, Meyer, Dawn Shaffer, and Brenda Dane.[3] (*Id.*)

Plaintiff asserts that, "[m]inutes after [she] received this email, [she] received a phone call. [Plaintiff] recognized the voice on the other end: it was Mr. Cuttell. He told [Plaintiff] that [she] was being terminated, effective immediately." (Ramirez Decl. ¶ 13.) At 3:54 p.m., eighteen minutes after Plaintiff emailed Cuttell that she did not feel comfortable withholding pay, Cuttell sent Plaintiff an email with a one page termination letter. (Doc. No. 35, Pl.'s Ex. E.) Two hours and forty-one minutes passed between Holley's original email and Plaintiff's termination. (*Id.*; Pl.'s Ex. D at 4.)

---

[2]     The positions of Mercer, Caudill, and Nelums are not specified in the record.

[3]     Dane works for Darana as vice president and strategic development. (Pl.'s Mem. 2.) Shaffer's position is not specified in the record.

4

## DISCUSSION

Based on the above alleged facts, Plaintiff seeks to amend her Complaint to assert punitive damages as a request for relief. She asserts she has met her burden under Minn. Stat. § 549.191—Minnesota's state procedural law—to do so. Defendants disagree.

Although not raised by either side, Plaintiff's motion also implicates the Federal Rules of Civil Procedure. In particular, Rule 15 governs the amendment of pleadings:

**(a) Amendments Before Trial.**

> **(1)** *Amending as a Matter of Course*. A party may amend its pleading once as a matter of course within:

>> **(A)** 21 days after serving it, or

>> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

> **(2)** *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

> **(3)** *Time to Respond*. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

(Fed. R. Civ. P. 15.) Relevant here, Federal Rule of Civil Procedure 15 states that when a party is seeking the court's leave, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this liberal standard, a party does not have an absolute right to amend. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). It is well established that a motion to amend should be denied if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to

5

cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005). The determination as to whether to grant leave to amend pursuant to Federal Rule of Civil Procedure 15 is within the sound discretion of the court. *See, e.g.*, *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 394 (8th Cir. 2016).

Under Minn. Stat. § 549.191, a party is barred from seeking punitive damages upon the commencement of the complaint or upon amendment as a matter of course, and a claim for punitive damages may only be brought only as follows:

### 549.191 CLAIM FOR PUNITIVE DAMAGES.

Upon commencement of a civil action, the complaint must not seek punitive damages. After filing the suit a party may make a motion to amend the pleadings to claim punitive damages. The motion must allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages. For purposes of tolling the statute of limitations, pleadings amended under this section relate back to the time the action was commenced.

Minn. Stat. § 549.191 (2017).[4] Therefore, unlike Federal Rule of Civil Procedure 15,

Minn. Stat. § 549.191 requires that a motion to amend to add a punitive damages claim

---

[4]     While this Court's Order highlights the conflict between Minn. Stat. § 549.191 and Federal Rule of Civil Procedure 15, the Court notes that § 549.191 may also conflict with Federal Rule of Civil Procedure 8, which requires a pleading to contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). Federal Rule of Civil Procedure 8 and Minn. Stat.

(Footnote Continued on Next Page)

"allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action," requires "one or more affidavits showing the factual basis for the claim," and requires the court to determine whether there is prima facie evidence to support the motion. If the court finds prima facie evidence, the "court shall grant the moving party permission to amend the pleadings to claim punitive damages." Minn. Stat. § 549.191.[5]

The undersigned recognizes that courts in this district have primarily analyzed a motion to amend for punitive damages relating to Minnesota state law claims under Minn. Stat. § 549.191, commonly referred to as Minnesota's "gatekeeping statute," and historically have not fully analyzed the potential conflict between the procedural requirements of Minn. Stat. § 549.191 and Federal Rule of Civil Procedure 15.[6] *See, e.g.*, *Ulrich v. City of Crosby*, 848 F. Supp. 861, 866 (D. Minn. 1994) ("In the Federal Courts of this District, the pleading of a punitive damage claim, under causes of action premised upon the Laws of the State of Minnesota, must generally conform to the requisites of

---

(Footnote Continued from Previous Page)
§ 549.191 appear to be in conflict if a plaintiff has sufficient facts at the outset that can be pleaded to support a punitive damages claim in the original complaint.

[5]     The statute provides that once prima facie evidence is found, the amendment "shall" be allowed. This is potentially in conflict with a court's discretion under Federal Rule of Civil Procedure 15.

[6]     Both parties in this case applied Minn. Stat. § 549.191 and § 549.20 in seeking and opposing Plaintiff's motion to amend. Although the Court referenced the potential conflict between Federal Rule of Civil Procedure 15 and Minn. Stat. § 549.191 at the hearing on this matter, the Court did not request supplemental briefing on the issue because under the particular circumstances of this case, applying either standard, the amendment is allowed.

Minnesota Statutes Sections 549.191 and 549.20."). This is true even after the Supreme Court's decision in *Shady Grove Orthopedic Associations v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *See, e.g.*, *Coy v. No Limits Educ.and Athletic Dev. Inc.*, No. 15-cv-93 (BRT), 2016 WL 7888047, at *2 (D. Minn. Apr. 1, 2016) ("In diversity actions based on Minnesota law, such as this one, the pleading of punitive damages should generally conform to the requirements of Minn. Stat. § 549.191.").

In *Shady Grove*, the Supreme Court addressed a situation where state and federal procedural rules collided. The Court applied the two-step analysis developed in *Hanna v. Plumer*, 380 U.S. 460, 470 (1965), to determine whether a New York law prohibiting class actions from seeking penalties conflicted with Federal Rule of Civil Procedure 23. *Shady Grove*, 559 U.S. at 421–22 (Stevens, J., concurring); *see id.* at 399 (affirming that Rule 23 "empowers a federal court 'to certify a class in each and every case' where the Rule's criteria are met"). The first step requires the court to "determine whether the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law." *Id.* at 421 (Stevens, J., concurring) (internal citations omitted).[7] If the federal rule is broad enough to result in

---

[7] There is no majority opinion in *Shady Grove*. Instead, the case resulted in a 4-1-4 split, with Justice Stevens concurring in part and in the judgment. This Court will apply Justice Stevens's concurrence based on the "narrowest grounds" principle. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1164–65 (D. Minn. 2014) ("Although it is perhaps oversimplification to call Justice Stevens's concurrence the holding of the court in *Shady Grove*, it is clear that five justices believe that it is the nature of the state statute at issue—whether the statute is substantive or procedural—that governs whether the state law can trump Rule 23's federal class-action mechanism."); *In re TD Bank: NA Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 635 (D.S.C.

(Footnote Continued on Next Page)

a direct collision, the court then analyzes the second step – whether the rule is a violation of the Rules Enabling Act. *Id.* at 422. This means that the federal rule must not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Justice Scalia, joined by Chief Justice Roberts and Justice Thomas, found that the Enabling Act is satisfied when the federal rule in question is procedural. *Shady Grove*, 559 U.S. at 409–10. Justice Stevens stated the Act is satisfied when the state law is procedural in the sense that it is not tied to any substantive right. *Id.* at 424. Ultimately, a plurality of the Court concluded that Federal Rule of Civil Procedure 23 was procedural in nature and did not violate the Rules Enabling Act, therefore allowing the class action to proceed in Federal Court despite the New York state law. *Id.* at 406–16.

In 2017, the court in *In re Bair Hugger* was the first in this district to apply *Shady Grove* in the context of a motion to amend to add punitive damages. 2017 WL 5187832 at *4. In doing so, the court concluded at the first step that both Federal Rule of Civil Procedure 15 and Minn. Stat. § 549.191 "address the same subject matter," and that Rule 15 "answers the question in dispute," and is "sufficiently broad to control the issue before the court." *In re Bair Hugger*, 2017 WL 5187832 at *4 (quoting *Shady Grove*, 559 U.S. at 421). The court reasoned that, "[t]he statutes conflict because the Minnesota procedural rule would not allow for the amendment absent affidavits establishing prima

_____

(Footnote Continued from Previous Page)
2015) ("Under standard rules of interpretation applied to plurality opinions like *Shady Grove*, a majority of courts have concluded that Justice Stevens' opinion is controlling in view of the 'narrowest grounds' principle.").

facie evidence of deliberate disregard for the rights and safety of others, where the federal rule has no such procedural requirement." *Id.*

The court in *In re Bair Hugger* also concluded that "Rule 15 is valid pursuant to the Rules Enabling Act[.]" 2017 WL 5187832 at *4. Thus, the court held that Federal Rule of Civil Procedure 15 should govern amendments seeking punitive damages, rather than the standard set forth in Minn. Stat. § 549.191. *See In re Bair Hugger*, 2017 WL 5187832, at *4, *aff'd*, No. 15-2666 (JNE/FLN), Doc. No. 985 (D. Minn. Oct. 19, 2017) (affirming without further discussion of the governing rule). Notably, however, the parties in *In re Bair Hugger* did not dispute that Federal Rule of Civil Procedure 15 was valid pursuant to the Rules Enabling Act and the court did not need to "take up the question [] whether the second step is governed by Scalia's or Stevens' analysis." *Id.* at *4.

Here, the parties did not raise the potential conflict between Federal Rule of Civil Procedure 15 and Minn. Stat. § 549.191, thus they did not address Justice Scalia's and Judge Stevens's analysis or whether § 549.191 is tied to any substantive rights. This Court observes, however, that the substantive rights for punitive damages are set forth in a separate statute – Minn. Stat. § 549.20. Section 549.20 states:

> (a) Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or

> intentionally disregards facts that create a high probability of
> injury to the rights or safety of others and:
>
> (1) deliberately proceeds to act in conscious or intentional disregard
> of the high degree of probability of injury to the rights or safety
> of others; or
>
> (2) deliberately proceeds to act with indifference to the high
> probability of injury to the rights or safety of others.

Following the test proscribed in *Shady Grove*, if Minn. Stat. § 549.191 is merely

procedural and Rule 15 does not alter the substantive rights, then the Rules Enabling Act

is not violated and Rule 15 is the required standard to apply.[8]

After the *In re Bair Hugger* decision, a different court in this district in *Inline*

*Packaging* disagreed with reasoning in *In re Bair Hugger*, and instead found that "the

type of direct conflict seen in <u>Shady Grove</u> is simply not present when this Court

compares Rule 15 and Minnesota Statute § 549.191." *Inline Packaging, LLC, v. Graphic*

*Packaging Int'l, LLC*, No. 15-cv-3183 (ADM/LIB), Doc. No. 534 at 7 (D. Minn. 2018).

In *Inline Packaging*, the court focused on the fact that Federal Rules of Civil Procedure

---

[8]     Courts in this district have discussed concerns that applying the lower standard
proscribed in Federal Rule of Civil Procedure 15 for allowing amendments to assert
claims for punitive damages in federal court could invite forum shopping. *See Kuehn v.*
*Shelcore, Inc.*, 686 F. Supp. 233, 234–35 (D. Minn. 1988). These concerns, however, are
off-set in several ways. For example, meritless motions to add punitive damages claims
can be challenged as futile under well-established federal procedural law. *See*
*Streambend Props. III, LLC v. Sexton Lofts, LLC*, 297 F.R.D. 349, 361 (D. Minn. 2014)
("Streambend's proposed addition of a claim for punitive damages is futile."); *Ulrich*,
848 F. Supp. at 877 (construing punitive damages claim under the Minnesota Human
Rights Act as futile under Rule 15). In addition, pleadings must meet the requirements in
Federal Rule of Civil Procedure 11(b) or parties and/or their counsel could face sanctions.
*See* Fed. R. Civ. P. 11(c). Therefore, federal courts are equipped to address meritless
claims for punitive damages without applying state court procedures.

15 and 23 are different because Rule 15 allows for court discretion, whereby Rule 23

does not, and concluded that because of the discretion allowed a court under Rule 15(a),

Federal Rule of Civil Procedure 15 and Minn. Stat. § 549.191 can "peacefully co-exist."

*See id.* at 7–8.[9] Therefore, the court found that Federal Rule of Civil Procedure 15 and

Minn. Stat. § 549.191 were not in "direct conflict" and Minn. Stat. § 549.191 was to be

the governing rule. *Inline Packaging*, 15-cv-3183, Doc. No. 534 at 6 (D. Minn. 2018).[10]

While this Court acknowledges the current split in this district on the issue of

whether Federal Rule of Civil Procedure 15 or Minn. Stat. § 549.191 should be applied

when determining whether a motion to amend to add a request for relief in the form of

punitive damages should be granted or denied, this Court need not resolve that dispute

today. As explained further below, under the circumstances of this case, the outcome of

the motion would be the same regardless of which standard is applied.

### A.  The Motion to Amend is Allowed Under Federal Rule of Civil Procedure 15

Except where amendment is permitted as a matter of course, under Federal Rule of

Civil Procedure 15, "a party may amend its pleading only with the opposing party's

written consent or the court's leave [and] [t]he court should freely give leave when justice

so requires." Fed. R. Civ. P. 15(a)(2). The trial court has discretion to decide whether to

---

[9]     *But cf. Selective Ins. Co. of S.C. v. Sela*, No. 16-cv-4077 (PJS/SER), Doc. No. 111 at 18 (D. Minn. Apr. 26, 2018) (concluding that determining whether Federal Rule of Civil Procedure 15 and Minn. Stat. § 604.18 can "peacefully co-exist" is the incorrect standard to apply).

[10]    The *Inline Packaging* decision was appealed to the District Court in that case. At the time of this Court's Order, the appeal in *Inline Packaging* remained pending.

grant leave to amend. *Kozlov*, 818 F.3d at 394. "There is no absolute right to amend." *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999). "[D]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001).

Plaintiff seeks leave to amend her Complaint to add punitive damages as a request for relief for Defendants alleged violations of the Minnesota Whistleblower Act. Because the MWA does not itself contain punitive damages requirements, the substantive requirements for punitive damages contained in Minn. Stat. § 549.20 apply. "To meet the substantive requirements for punitive damages under Minnesota law, a party must show—by clear and convincing evidence—that the defendant acted with 'deliberate disregard for the rights or safety of others.'" *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1010 (D. Minn. 2013). (quoting Minn. Stat. § 549.20, subd. 1(a)). Deliberate disregard has been statutorily defined to mean "the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others." Minn. Stat. § 549.20, subd. 1(b).

Plaintiff argues that an amendment to allow for pleading punitive damages should be allowed because Defendants acted with deliberate disregard for her rights. (Pl.'s Mem. at 1 ("Because Ramirez's evidence could lead a jury to firmly believe that Defendants consciously disregarded her rights under the Minnesota Whistleblower Act, the Court should grant this motion.").) Defendants essentially make a futility argument in response,

albeit focusing on the merits of the underlying whistleblower claim rather than on whether Plaintiff has pleaded a plausible claim of deliberate disregard under Minn. Stat. § 549.20. Defendants assert that because Plaintiff was an at-will employee she could be terminated at any time, and here "the evidence will ultimately establish that Plaintiff's employment was terminated due to her history of failing to adhere to certain company policies." (Doc. No. 38, Defs.' Joint Mem. in Opp'n to Mot. ("Defs.' Mem.") 2.)

A futility challenge to a motion to amend a complaint is successful where "claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted." *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998); *see also Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (stating that a motion to amend is futile if the amended complaint would not survive a motion to dismiss).[11] To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal

---

[11]     Because punitive damages are a prayer for relief and not a cause of action, one might argue they are not a claim suited for a motion to dismiss under Rule 12. *See, e.g., Oppenheimer v. Southwest Airlines Co.,* No. 13-CV-260, 2013 WL 3149483, at *3 (S.D. Cal. June 17, 2013). Futility of the amendment, however, is the only argument raised by Defendants to deny the present motion. Therefore, this Court does not depart from the settled futility framework when analyzing whether the motion to amend to add punitive damages as a request for relief should be granted.

evidence of [the claim]." *Id.* at 556. Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

The first question, therefore, is whether Plaintiff has pleaded enough facts to plausibly support a claim for punitive damages under Minn. Stat. § 549.20. The relevant facts provided by Plaintiff in her Complaint are as follows:

13.     On Friday, June 30, 2017, at approximately 1:13 p.m., Joe Holley sent an e-mail identifying six employees who would no longer be employed by Defendants. The employees were part of a crew in Elmsford, New York, who had allegedly abandoned their jobs and refused to return to work.

14.     At 1:21 p.m., Bart Tolleson reported that "Per Darryl [Cutell], these 6 lower life forms are not to be paid this week for any hours worked this week."

15.     At 1:23 p.m., Cuttell, sent an email stating, "they will not be paid next week, as per Darryl Cuttell, have them call with any concerns and I will deal with accordingly as they have done to us." [   ]

16.     At the time, Ramirez was responsible for handling pay roll. At 2:34 p.m. Ramirez responded to Cuttell, "Just to confirm, you do not want to pay them for hours worked?"

17.     At 3:30 p.m. Cuttell responded that he in fact did not want to pay the employees, exclaiming, "NO!!!!!!!"

18.     At 3:36 p.m. Ramirez replied, "I do not feel comfortable, not paying these employees for hours worked because it is illegal (Dept. of Labor Laws"." (emphasis added). [   ]

19.     Ramirez's opposition apparently angered Cuttell. At 3:46, he shot back: "I DO NOT CARE WHAT YOU THINK, WE ARE NOT PAYING THEM!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!" [   ]

20.     At 3:54 p.m., eighteen minutes after Ramirez's report of violations of law, Cuttell sent Ramirez an email. The body of the email contained one word: "termination". [   ] The email included Ramirez's termination letter, which noted that the termination was effective immediately and provided no reason for termination. [   ]

(Doc. No. 1, Compl. ¶¶ 13–20 (citations omitted).)[12] Plaintiff attached the underlying emails and termination letter referenced above to her Complaint. (Doc. Nos. 1-2, 1-3.)

Plaintiff's allegations in her Complaint include facts showing that she had communicated her unwillingness to break Department of Labor Laws to Darana and AMPS CEO Darryl Cuttell, and that Cuttell's response to her concern was quick and direct: "I DO NOT CARE WHAT YOU THINK, WE ARE NOT PAYING THEM!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!" (Compl. ¶ 19.) Plaintiff alleges she was terminated over the phone minutes after receiving this email, which was followed by a one-page termination letter shortly thereafter. These facts indicate deliberate indifference and include enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 570; *see also McCracken v. Carlton College*, 969 F. Supp. 2d 1118, 1133 (D. Minn. 2013) ("The causation element may be satisfied by evidence of circumstances that justify an inference of retaliatory motive, such as showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time.").

Defendants argue that Plaintiff's claim for punitive damages fails because her underlying Minnesota Whistleblower Act claim is fatally flawed. (Defs.' Mem. 1.) "A prima facie case of retaliatory discharge under the whistleblower statute requires the

---

[12]    Plaintiff's original Complaint and her proposed Amended Complaint are virtually identical other than that the request for punitive damages has been added in her Prayer for Relief in the latter. (*See* Doc. No. 1, Compl., and Doc. No. 36, Ex. I ("Proposed Am. Compl.").)

employee to demonstrate statutorily protected conduct by the employee, an adverse employment action by the employer, and a causal connection between the two." *Gee v. Minn. State Colls. & Univs.*, 700 N.W.2d 548, 555 (Minn. Ct. App. 2005). In particular, Defendants argue that Plaintiff's actions were not statutorily protected because Plaintiff did not *report* planned illegal conduct,[13] and were not statutorily protected because Plaintiff was not *ordered* to carry out the illegal conduct.[14] (Defs.' Mem. 11–12.) Defendants argue that Plaintiff's alleged report was not a protected activity because the report was made in the normal course of her job duties, citing *Freeman v. Ace Telephone Ass'n*, 404 F. Supp. 2d 1127, 1140–41 (D. Minn. 2005). Defendants further argue that Darryl Cuttell's emails could not be construed as an order because the email was sent by Cuttell, the President of Darana, while Plaintiff was employed by AMPS, and because Plaintiff did not have the required authority to withhold pay. (Defs.' Mem. 12.)

When undertaking a futility analysis the court "look[s] only to the facts alleged in the complaint and construe[s] those facts in the light most favorable to the plaintiff." *Riley v. St. Louis Cty. of Mo.*, 153 F.3d 627, 629 (8th Cir 1998). The Court also accepts as

---

[13]    The Minnesota Whistleblower Act prohibits an employer from retaliating against an employee who "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official." Minn. Stat. § 181.932, subd. 1(1).

[14]    The Minnesota Whistleblower Act prohibits an employer from retaliating against an employee who "refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason." Minn. Stat. § 181.932, subd. 1(3).

true all of the factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).

Nothing in Plaintiff's Complaint indicates that reporting illegalities relating to payroll was within the normal course of her job duties as a Human Resources Generalist or within her duties of handling payroll. And Defendants do not contest that Plaintiff's email to Cuttell was otherwise "a report" relating what she reasonably believed to be a violation of law. Accordingly, at this stage, Plaintiff has met her pleading burden with respect to a report under the MWA.

Plaintiff similarly has met her pleading burden with respect to an order under the MWA. Defendants' argument that Cuttell's email could not be construed as an order because Cuttell is the President of Darana and Plaintiff was an employee of AMPS is not persuasive based on the pleadings. Defendants admit in their joint answer that, "Defendants share the same President/Chief Executive Officer, Darryl Cuttell." (Doc. No. 1, Compl. ¶ 6; Doc. No. 16, Defs.' Joint Answer ¶ 6.) Further, Defendants' argument that the email could not have been an order because Plaintiff did not have the required authority to withhold pay is not only an unreasonable inference based on the allegations in Plaintiff's Complaint, but is also belied by Defendants own statements in response to Plaintiff's motion: "Since Plaintiff was responsible for handling the payroll, she was copied on those emails, along with other high level officials and managers of both AMPS and Darana." (Defs.' Mem. 3.) Finally, a plausible reading of Cuttell's email, with the all-capital letters and forty-four exclamation points, is that it was intended to be an order to not pay employees who walked out on the job site. (*See* Compl. ¶ 19.)

The Court notes that Defendants have not moved to dismiss Plaintiff's underlying state claims. Perhaps this is because the questions of whether Plaintiff *reported* planned illegal conduct or was *ordered* to carry out the illegal conduct may be questions of fact, better suited for challenge later in the litigation.[15] Here, however, to the extent any futility argument for punitive damages is dependent on the plausibility of the underlying claims, the Court finds the allegations underlying the whistleblower claims adequate for purposes of pleading punitive damages. The emails plausibly indicate the reporting of and a direction from high-ranking members of the company to take part in illegal action. And as explained above, the emails also plausibly show deliberate disregard for the rights or safety of others.

Therefore, this Court concludes that Plaintiff's request for leave to add punitive damages as a request for relief is not futile and satisfies the Federal Rule of Civil Procedure 15 requirements.

## B.  The Motion to Amend is Allowed Under Minn. Stat. § 549.191

Under the Minnesota procedural statute, before allowing a punitive damages claim for relief to be pleaded, the moving party must show "prima facie evidence in support of the motion," supported by affidavit. Minn. Stat. § 549.191. This means to allow an amendment following the Minn. Stat. § 549.191 process, the Court needs to find that the

---

[15]    The Court notes that Defendants' argument that "[t]he evidence will show that Plaintiff's termination was unrelated to her email to Cuttell on June 30, 2017" (Defs.' Mem. 38), is likewise premature. Nothing in this Order bars Defendants from challenging the alleged facts and asserting legal defenses to all claims as the case progresses.

Plaintiff has shown clear and convincing, prima facie evidence, that Defendants acted with deliberate disregard for the rights or safety of others. *See Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008–09 (D. Minn. 2003) (referencing the court's "independent search for clear and convincing, prima facie evidence, that the defendant acted with a deliberate disregard for the rights or safety of others"). Prima facie evidence means that the court only looks at the evidence of the moving party, and does not make any credibility rulings or even consider the other parties' evidence. *Target Corp.*, 960 F. Supp. 2d. at 110.

Contrary to Defendants' assertions, Plaintiff does not rely significantly on "characterization of the evidence and conclusory statements." (Defs.' Mem. 5.) Plaintiff's allegations are factual allegations of what occurred, and she supports those facts with exhibits and her declaration, as is required by Minn. Stat. § 549.191. (*See* Doc. Nos. 31, 32, 35, 36.) As explained above in the Court's Rule 15 futility analysis, Plaintiff's allegations present a plausible punitive damages claim. In this instance, the facts contained in Plaintiff's allegations, declaration, and exhibits just so happen to also show sufficient evidence under Minn. Stat. § 549.191 that Defendants acted with a deliberate disregard for the rights or safety of others. (*See* Pl.'s Ex. C at 1 (indicating Plaintiff was instructed to withhold pay from employee); Pl.'s Ex. D at 1 (indicating that Plaintiff made her concerns about illegality known to her employer); *id.* (indicating that within eighteen minutes of communicating those concerns she received an all-caps email affirming the original instruction); Pl.'s Ex. E at 1(indicating that Plaintiff was terminated shortly thereafter).)

Accordingly, this Court concludes that an amendment to add a punitive damages claim for relief is also supported under the requirements of Minn. Stat. § 549.191.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Leave to Amend Complaint (Doc. No. 28) is **GRANTED**.

2.      On or before **May 4, 2018**, Plaintiff shall file an Amended Complaint in the same form as the proposed amended pleading filed in support of Plaintiff's motion (*i.e.*, Doc. No. 36, Ex. I).


Dated: April 27, 2018                    *s/ Becky R. Thorson*
                                          BECKY R. THORSON
                                          United States Magistrate Judge